IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                Case No. 1:21-CR-00226-KWR

ANDRE SEGURA,

    Defendant.

## MEMORANDUM ORDER AND OPINION DENYING DEFENDANT'S MOTION TO SUPPRESS ILLEGAL SEARCH

THIS MATTER comes before the Court upon Defendant Andre Segura's Motion to Suppress Illegal Search **(Doc. 29)**. Defendant seeks suppression of all evidence obtained as fruit of the search of his private residence, or, in the alternative, a *Franks* hearing. *Id.* Having reviewed the parties' briefs and the applicable law, the Court finds that Defendant's motion is not well taken and therefore **DENIES** the motion.

### BACKGROUND

Unless otherwise indicated, the facts derive from the first search warrant, **Doc. 29-2**. On November 29, 2020, at approximately 6:30 p.m., police responded to a 911 call by Ms. Heaven Dimas at 908 Los Prados de Guadalupe NW. Ms. Dimas stated that her boyfriend, Defendant, had been shot and required medical assistance. When officers entered the house, they found Defendant on the couch with gunshot wounds on his upper right arm, abdomen, and upper right leg. Defendant advised the officers that he owned a firearm that he had secured on the kitchen counter as well as that he had functioning security cameras on the property for which a technician could retrieve the video footage. The officers also interviewed Ms. Dimas, who stated that an unknown man in a ski

mask and body armor entered the house armed with a long rifle and demanded money. Ms. Dimas said that she did not know what he was talking about. The man then exited the residence. Ms. Dimas told the officers that as the man left, she heard gunshots, but she did not see who was shot.

The officers cleared the residence. In doing so, they observed two spent casings inside the garage. They did not observe a firearm in the kitchen as Defendant had indicated. They finished securing the residence at 6:49 p.m. They also rendered medical aid to Defendant until the Bernalillo County Fire Department arrived on scene. An ambulance transported Defendant to University of New Mexico Hospital.

Approximately 100 yards west of the home, a black Mercedes SUV with the headlights still on had crashed into a green fence. Officers observed at least three impacts on the front passenger side window. They also observed spent and live handgun ammunition surrounding the vehicle. Officers sealed the SUV and had it towed pending a search warrant.

Based on this information, Detective Laura Dailey sought a search warrant for the entire home. The warrant stated that within this location, "there is now being concealed certain property" including "interior and exterior photographs"; video surveillance equipment and recordings; documentation of occupancy or ownership; blood and other trace evidence like hair and fibers; "latent and palm print collection"; clothing or towels that include trace evidence such as blood, hair, or saliva; and "any and all firearms," ammunition, gun cleaning equipment, and paperwork demonstrating ownership or possession. The affidavit indicated that the listed items "[have] been obtained or [are] being possessed in a manner which constitutes criminal offense, [are] designed for use or which [have] been used as a means of committing a criminal offense, and would be material evidence in a criminal prosecution." *Id.* at 2.

The judge granted this warrant, which officers then executed. **Doc. 29 at 9**. Officers found firearms and evidence of drug trafficking in the home, which led them to request a second search warrant. *Id.* This second warrant led to the discovery of "[m]uch of the evidence on which this prosecution is based." *Id.* Defendant argues that the *first* warrant was improper; he avers it contained material falsehoods and lacked probable cause, nexus, and particularity. *Id.* at 10. Because the second warrant was based on evidence discovered during the execution of the first warrant, Defendant seeks suppression of the evidence from the second search as a fruit of the purportedly unlawful first warrant.

## DISCUSSION

I. **The warrant is facially valid under both the nexus and particularity requirements for probable cause.**

   A. *The affidavit meets the nexus requirement because it provides a sufficient basis for a person of reasonable caution to believe that the items sought in the warrant would be found within Defendant's house.*

The Fourth Amendment requires a showing of probable cause before a neutral magistrate may issue a valid search warrant. *Franks v. Delaware*, 438 U.S. 154, 164 (1978). Probable cause is present when the available facts "would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotations and brackets omitted). A probable cause analysis involves consideration of the "totality of the circumstances" and is a "practical and common-sensical standard." *Id.* at 244.

When a magistrate judge has issued a search warrant, a reviewing court affords "great deference" to the issuing judge's determination. *United States v. Leon*, 468 U.S. 897, 914 (1984). Indeed, "[o]nce a magistrate judge determines probable cause exists, the role of a reviewing court is merely to ensure the Government's affidavit provided a 'substantial basis' for reaching that conclusion," *not* to engage in a *de novo* review of the probable cause determination. *United States*

3

*v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (citation omitted). However, in the case of inquiry into knowing or reckless false statements in the affidavit, a magistrate who acts as a "rubber stamp for the police," or an affidavit lacking substantial basis for probable cause, a court need not defer to the issuing judge's determination. *Leon*, 468 U.S. at 914–915.

Essential to probable cause is a "nexus between suspected criminal activity and the place to be searched." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000). The owner or occupant of the place to be searched need not be a suspect in the crime; the nexus is between the sought-after evidence and the property. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). The connection is sufficient "when the circumstances set out in the affidavit would warrant a person of reasonable caution to believe that the articles sought would be found at the place to be searched." *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997).

Defendant argues that probable cause and nexus are lacking because there is "no reasonable basis to believe that there would be evidence of contraband or a crime *in Mr. Segura's house*." **Doc. 29 at 13** (emphasis added). According to Defendant, the warrant lacked nexus because it allowed officers to search the entire house when the affidavit referenced only a "limited incursion into Mr. Segura's house" and "two spent casings" in the garage. *Id.* The United States disagrees.[1]

The Court finds that a substantial basis existed for the issuing judge to find probable cause, including nexus. The affidavit described a home invasion and a shooting outside the home. **Doc. 29-2 at 3**. Searching the home for palm prints, as well as clothing and towels that feature physical evidence like bodily fluids and hair, is a commonsense way to investigate the intruder's identity.

---

[1] The United States also challenges Defendant's standing to assert a Fourth Amendment violation. **Doc. 34 at 5**. Specifically, the United States argues that Defendant has not met his burden to demonstrate a reasonable expectation of privacy in the home at 908 Los Prados de Guadalupe NW. After the United States raised the standing issue, Defendant clarified unambiguously that he and Ms. Dimas "lawfully rented the residence." **Doc. 35 at 1**. Renters have a reasonable expectation of privacy in their dwellings and have standing to challenge unlawful searches. *Chapman v. United States*, 365 U.S. 610, 616–17 (1961); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2269 (2018) (Gorsuch, J., dissenting) (citing *Chapman* for this holding).

This type of evidence would be natural to find in the house, where the intruder was physically present for a time. Video footage is similarly connected to the house, as the footage surveilled the home at the time of the invasion and may reveal the identity of the invader. Defendant freely offered the video footage, but the Court knows of no rule that forbids the issuance of a warrant for consented-to evidence, even if such a decision may be somewhat redundant. In fact, case law from this district suggests that obtaining a warrant may be a wise choice even when consent is available. *See United States v. Coleman*, No. 16-CR-668, 2016 WL 10179291, at *3 (D.N.M. July 16, 2016). In total, a person of reasonable caution would have support for a belief that the above items—which would certainly constitute evidence of a crime—would be found in the home.

Other evidence sought in the warrant also meets demonstrates a nexus to the home. When investigating a home invasion, taking pictures of the inside and outside of the house documents the scene of the crime. Finding paperwork regarding ownership or occupancy of the home that suffered the intrusion confirms the identity of the victims; in the case of a rental home, it may help to identify the homeowner, who may be an additional victim of the intrusion. Documentation related to home ownership or occupancy validly has been sought in search warrants even when occupancy is not actively in dispute. *See United States v. Pulliam*, 748 F.3d 967, 972 (10th Cir. 2014) (felon in possession of a firearm case); *United States v. Adams*, Crim. No. 18-3413, 2019 WL 6784073, at *1 (D.N.M. Dec. 12, 2019) (child pornography case). Searching for blood, too, is well-connected to the house and the crime. Defendant's blood on the couch and elsewhere is evidence of the intruder's wrongful conduct during the shooting outside the home. *See* **Doc. 34 at 15**. Nexus addresses the issue of whether evidence is likely to be found in the place identified, *Hargus*, 128 F.3d at 1362, and here, evidence of the extent of the injury is likely to be found in the

house, even if Defendant was not shot there. While this category of items, if found, is unlikely to reveal the invader's identity, it is still evidence: it illuminates the extent of the crime.

The connection between the house and firearms is less direct, but in the Court's view, still sufficient to provide a substantial basis for the issuing judge to find probable cause. Police observed "two spent casings" in the garage when first called to the scene, as well as handgun ammunition near the SUV outside, and Defendant mentioned possessing a firearm. Therefore, firearms are not an unreasonable object of a search as evidence to gain insight into this aspect of the crime scene, even if Defendant's firearms are lawfully owned. Seizing firearm(s) from Defendant's home and any documentation associated with them permitted the police to determine whether the casings and ammunition found in the garage and near the SUV belonged to Defendant or if the intruder possibly brought an additional weapon. This connection is enough for a "substantial basis" to find probable cause and nexus for a firearms search.

More broadly, Defendant objects to a search of the entire home when the affidavit does not indicate how far past the threshold the intruder ventured. **Doc. 29 at 17**. Defendant points to no cases involving a home invasion in which only a portion of the home was subject to search. At a minimum, the parties agree that the intruder entered the home, that two spent casings were found in the garage, that Defendant was on the living room couch bleeding and awaiting medical assistance when the officers arrived, and that Defendant stated that his firearm was secured on the kitchen counter. *See* **Doc. 29 at 4; Doc. 34 at 2**. The garage, living room, and kitchen are explicitly mentioned in the affidavit. *See* **Doc. 29-2 at 3**. Therefore, searching these locations for weapons, the intruder's DNA or biological evidence, fingerprints or palm prints, and blood to demonstrate how badly Defendant was wounded is reasonable because the affidavit's narrative suggests that such articles might be found there. Taking photographs of these places, as well as of the exterior

of the house, is a natural extension of this investigation. Further, ownership or occupancy documentation might reasonably be found anywhere within the home. It follows that, because a reasonably cautious person would expect such documentation to be found throughout the house, a search of the entire house is appropriate under the nexus requirement.[2]

> B. *The warrant's language, while expansive, is sufficiently particular because it refers to identification of the perpetrator for "this case" rather than a broad range of possible crimes.*

Defendant also argues that particularity is lacking. **Doc. 29 at 26**. As one example, he states that the reference to answering machines, pagers, and cell phones is inappropriate because nothing in the affidavit supports the conclusion that any of these items will have information related to the home invasion. *Id.* For the reasons stated below, the Court finds that this motion is not well taken.

Defendant expands on the particularity issues by arguing that the warrant's language seeking authorization for "any and all evidence which may lead investigators to the offender(s) and or possible witnesses in this case" is overbroad. **Doc. 29 at 19** (quoting **Doc. 29-2 at 4**). The United States minimizes this language as "boilerplate" and states that the enumerated list of categories earlier in the affidavit implicitly limits the broad implications of this concluding statement. **Doc. 34 at 19**. The Tenth Circuit has stated that the existence of a list of items does not automatically limit an overbroad catch-all phrase, which disposes of the United States' argument in this respect. *See United States v. Dunn*, 719 Fed. App'x 746, 750 (10th Cir. 2017). However, the overbroad language is different in cases like *Dunn* and *Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009). Those cases address language that permits the seizure of evidence related to *any* crime, not the seizure of any evidence related to the *specified* crime. *See Cassady*, 567 F.3d at 642; *Dunn*,

---

[2] The Court adds that while executing the search warrant, detectives observed what they believed to be tetrahydrocannabinol ("THC") wax in plain view in the garage. **Doc. 34 at 3; Doc. 29-3 at 4**. Even if the search had been limited to only the kitchen, garage, and living room, this more restricted search still would have led to the discovery of suspected drug contraband.

719 Fed. App'x at 748–49 (warrant permitted seizure of items including "but not limited to" the listed items, which "effectively authorized a search of everything in the apartment for any reason").

Here, the terminating language allows a search for any evidence that "may lead investigators to the offender(s) and or possible witnesses *in this case*[.]" **Doc. 29-2 at 4** (emphasis added). This language does not permit "general, exploratory rummaging," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), but instead tethers itself to the identification of specific individuals *in this case*: the offender(s) and possible witnesses. The affidavit describes the wrongdoing at issue—a home invasion and a shooting—so the language refers to evidence identifying the perpetrator of the acts described or witnesses to those acts. Although the Court strongly urges future affiants to make their case for a warrant with greater precision, this language is not so broad as to doom the warrant entirely. *See United States v. Suggs*, 998 F.3d 1125, 1134 (10th Cir. 2021) (explaining that "a warrant may satisfy the particularity requirement if its text constrains the search to evidence of a specific crime such that it sufficiently narrows language that, on its face, sweep too broadly"); *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009) (permitting warrant for "certain property and evidence to show the transportation and delivery of controlled substances").

**II.     Because the warrant's false statements are immaterial to a finding of probable cause, Defendant is not entitled to a *Franks* hearing.**

Even a facially valid warrant may contain false statements that render it invalid under *Franks v. Delaware*, 438 U.S. 154 (1978). The requirements are twofold: the affidavit must contain a "reckless misstatement or omission" and that misstatement must be material such that without it, the warrant could not have been issued. *United States v. Moses*, 965 F.3d 1106, 1110 (10th Cir. 2020). A defendant's "substantial preliminary showing" on both elements entitles him to an evidentiary hearing. *Id.*

Defendant argues that the warrant contains two false statements: (1) it says that video evidence "is now being concealed" and is being possessed unlawfully even though Defendant volunteered access to this footage and lawfully purchased his home security system, and (2) it says that exterior photographs are concealed inside his home and were obtained illegally even though officers were free to take exterior photographs. **Doc. 29 at 11**. Defendant states that the affidavit, devoid of those statements, cannot support probable cause. *Id.*

The United States makes a somewhat tortured attempt to argue that even though Defendant had affirmatively volunteered the surveillance footage, his inability to provide it immediately due to having "just been shot three times" and the fact that retrieval would require a technician meant that it remained "concealed." **Doc. 34 at 7**. These arguments cannot escape the definition of the word "conceal"—"to prevent disclosure or recognition of" or "to place out of sight." *Conceal,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1994). Rather than preventing disclosure or placing out of sight, Defendant actively disclosed and drew attention to his available surveillance footage. The affidavit's assertion that Defendant concealed this footage has no basis. There is also no evidence to support the fact that he concealed photographs.

Regarding the lawfulness issue, the list of items sought in the affidavit terminates in the following manner: "which has been obtained or is being possessed in a manner which constitutes criminal offense, is designed or intended for use or which has been used as a means of committing a criminal offense, *and* would be material evidence in criminal prosecution." **Doc. 29-2 at 2** (emphasis added). The placement of this statement indicates that all of the listed items have been obtained unlawfully. The United States argues that the "and" should be read as an "or," which would avoid this result. **Doc. 34 at 9**. The Court again encourages future affiants seeking a warrant to choose their words carefully; as written, the affidavit makes false statements.

However, Defendant's path to a *Franks* hearing becomes rocky when materiality enters the analysis. Even if the false statements were excised from the affidavit, probable cause would still exist. The foundation for probable cause comes from the narrative describing the home invasion and the conditions surrounding the shooting. *See* **Doc. 29-2 at 3**. As the Court addressed above in its discussion of nexus, the security footage and photographs are reasonable objects of a search given the contents of the narrative. This fact remains true even if those objects were not concealed or obtained illegally—they may still constitute important evidence. Indeed, Defendant makes no showing of materiality beyond conclusory statements in the Motion to Suppress. **Doc. 29 at 10–12**. Defendant's reply brief addresses only falsity. **Doc. 35 at 2–3**. As a result, Defendant has failed to demonstrate the materiality of the false statements and is not entitled to a *Franks* hearing.

The Court therefore **DENIES** Defendant's Motion to Suppress Illegal Search (**Doc. 29**) in its entirety.

**IT IS SO ORDERED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE